1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF FLORIDA
2
              14-20895-CR-COOKE/TORRES
3

4
UNITED STATES OF AMERICA,      )
5                              )
              PLAINTIFF,       )
6                              )
         VS.                   )
7                              )
RICKY JERMAINE ATKINS,         )
8                              )
              DEFENDANT.       )
9  _____)

10            (TRANSCRIPT BY DIGITAL RECORDING)

11

12         TRANSCRIPT OF ARRAIGNMENT AND PRETRIAL DETENTION

13 HEARING HAD BEFORE THE HONORABLE ALICIA M. OTAZO-REYES, IN

14 MIAMI, MIAMI-DADE COUNTY, FLORIDA, ON DECEMBER 15, 2014, IN THE

15 ABOVE-STYLED MATTER.

16

17
APPEARANCES:
18
FOR THE GOVERNMENT:   SETH M. SCHLESSINGER, A.U.S.A.
19                     99 NE 4TH STREET
                       MIAMI, FL 33132 - 305 961-9260
20
FOR THE DEFENDANT:    ARUN RAVINDRAN, A.F.P.D.
21                     150 WEST FLAGLER STREET, SUITE 1700
                       MIAMI, FL 33130 - 305 530-7000
22

23            CARL SCHANZLEH, RPR - CM
              CERTIFIED COURT REPORTER
24            9960 SW 4TH STREET
              PLANTATION, FLORIDA 33324
25                954 424-6723

 1

 2                           TABLE OF CONTENTS

 3  WITNESSES:                      DIRECT  CROSS REDIRECT RECROSS

 4
                        INDEX TO EXHIBITS
 5
    EXHIBITS                     MARKED FOR      RECEIVED
 6                               IDENTIFICATION   IN EVIDENCE

 7  DESCRIPTION                    PAGE    LINE    PAGE    LINE

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (MIAMI, MIAMI-DADE COUNTY, FLORIDA;  DECEMBER 15, 2014, IN OPEN

2    COURT.)

3         THE CLERK:  THE UNITED STATES OF AMERICA VERSUS RICKY

4    JERMAINE ATKINS, CASE NUMBER 14-20895-CRIMINAL-COOKE.

5         MR. SCHLESSINGER:  GOOD MORNING, YOUR HONOR.  SETH

6    SCHLESSINGER FOR THE UNITED STATES.

7         MR. RAVINDRAN:  GOOD MORNING, YOUR HONOR.  ARUN

8    RAVINDRAN, ASSISTANT FEDERAL DEFENDER, FOR MR. ATKINS.

9         THE COURT:  ALL RIGHT.  WE ARE HERE FOR BOTH

10   ARRAIGNMENT AND PRETRIAL DETENTION HEARING.

11        MR. RAVINDRAN:  THAT'S CORRECT, YOUR HONOR.

12        THE COURT:  ALL RIGHT.  LET'S GO AHEAD WITH THE

13   ARRAIGNMENT FIRST.

14        MR. RAVINDRAN:  YOUR HONOR, WE HAVE RECEIVED A COPY OF

15   THE INDICTMENT.  WE WAIVE ITS FORMAL READING.  AT THIS TIME WE

16   ENTER A PLEA OF NOT GUILTY, REQUEST TRIAL BY JURY, AND REQUEST

17   ENTRY OF THE STANDING DISCOVERY ORDER.

18        THE COURT:  ALL RIGHT.  I WILL ACCEPT THE PLEA OF NOT

19   GUILTY.  THE STANDING DISCOVERY ORDER WILL BE ENTERED.  THE

20   CASE WILL PROCEED BEFORE JUDGE COOKE.

21        ALL RIGHT.  READY FOR THE DETENTION HEARING?

22        MR. RAVINDRAN:  WE ARE, YOUR HONOR.

23        MR. SCHLESSINGER:  WE ARE, YOUR HONOR.

24        THE COURT:  MR. SCHLESSINGER, YOU MAY PROCEED BY

25   PROFFER, SIR.

```
 1        MR. SCHLESSINGER:  THANK YOU VERY MUCH, YOUR HONOR.

 2        IN ADDITION TO THE FACTUAL PROFFER, YOUR HONOR, I DID

 3  HAVE THREE EXHIBITS THAT I WANTED TO ATTACH TO THE PROFFER.  I

 4  HAVE A COPY FOR THE COURT AS WELL AS COPY FOR DEFENSE COUNSEL

 5  IF I MIGHT HAND THEM UP.

 6        THE COURT:  ALL RIGHT.  GO AHEAD.

 7        MR. SCHLESSINGER:  AND, YOUR HONOR, I WILL MAKE

 8  REFERENCE TO SPECIFIC EXHIBITS AS THE PROFFER PROCEEDS.

 9        AT ALL TIMES UNTIL HE WAS FIRED AS A RESULT OF THE

10  EVENTS THAT LED TO THIS INDICTMENT, THE DEFENDANT, MR. ATKINS,

11  WAS AN EMPLOYEE OF THE FLORIDA KEYS CHILDREN SHELTER WHICH IS A

12  FACILITY OPERATED BY THE FLORIDA DEPARTMENT OF CHILDREN AND

13  FAMILIES IN TAVERNIER, FLORIDA, FOR TROUBLED CHILDREN,

14  INCLUDING CHILDREN WHO HAD BEEN ABUSED, NEGLECTED OR ABANDON,

15  CHILDREN WITH PROBLEMS OF SUBSTANCE ABUSE, CHILDREN THAT HAVE

16  RUN AWAY FROM HOME.

17        BY AUGUST OF 2014 MR. ATKINS' ROLE WAS OVERNIGHT

18  STAFF.  IN OTHER WORDS, HE AND ANOTHER EMPLOYEE WORKED AT THE

19  SHELTER OVERNIGHT TO PROVIDE SECURITY, ENSURE THE SAFETY OF THE

20  CHILDREN LIVING THERE BE AVAILABLE IF ANYTHING WENT WRONG.

21        NOW, MR. ATKINS IS ALSO A PIMP WHO DIRECTS AND

22  COLLECTS MONEY FROM WOMEN, AND IN THIS CASE MINOR GIRLS WHO

23  WORK FOR HIM AS PROSTITUTES.

24        IN AUGUST OF 2014 MR. ATKINS TURNED HIS ATTENTION TO

25  THE CHILDREN THAT HE WAS SUPERVISING AT THE CHILDRENS SHELTER
```

1  AS POTENTIAL RECRUITS FOR HIS PROSTITUTION OPERATION.  IN

2  PARTICULAR MR. ATKINS DISCUSSED WITH MINOR FEMALE G.W., A 15

3  YEAR OLD GIRL OR RESIDENT OF THE SHELTER, DISCUSSED WITH HER OF

4  PROSTITUTING FOR HIM.

5       G.W. IN TURN TOLD L.P. WHO IS A 16 YEAR OLD FEMALE

6  RESIDENT OF THE SHELTER ABOUT ATKINS' PROSTITUTION PROPOSAL.

7  ALL THREE OF THEM DISCUSSED IT AND ULTIMATELY G.W. AND L.P.

8  AGREED TO DO IT.

9       AUGUST 15TH, 2014, WAS A NIGHT THAT MR. ATKINS WAS

10  SUPPOSED TO BE WORKING AT THE SHELTER BUT INSTEAD HE CALLED IN

11  AT THE LAST MINUTE TO TAKE LEAVE.  THAT NIGHT AT APPROXIMATELY

12  10:30 OR 11:00 P.M. AS THEY HAD DISCUSSED WITH MR. ATKINS, G.W.

13  AND L.P. RAN AWAY FROM THE SHELTER.

14       CELL SITE EVIDENCE LATER OBTAINED BY THE GOVERNMENT

15  FOR THE CELLPHONE WHICH WAS SEIZED FROM MR. ATKINS AT THE TIME

16  OF HIS ARREST SHOWS THAT INDEED MR. ATKINS SPENT THE DAY -- THE

17  DAY OF AUGUST 15TH IN THE HOMESTEAD AREA, THEN TRAVELED DOWN TO

18  THE UPPER KEYS, AND SPECIFICALLY TAVERNIER AT APPROXIMATELY

19  10:30 OR 11:00 P.M. BEFORE RETURNING TO THE HOMESTEAD AREA

20  LATER IN THE NIGHT.

21       MR. ATKINS DISCUSSED WITH G.W. AND L.P. HOW

22  PROSTITUTING FOR HIM WOULD WORK AS HE DROVE THEM NORTHBOUND

23  TOWARD THE HOMESTEAD AREA.

24       ONCE AT HOMESTEAD MR. ATKINS STOPPED TO PICK UP

25  SEVERAL ADULT MALE ASSOCIATES AND THEN HE TOOK G.W. AND L.P. TO

1   A HOUSE IN THE HOMESTEAD AREA WHERE MR. ATKINS INFORMED G.W.

2   THAT SHE WOULD BE, QUOTE, TESTED.  THE TESTING WAS TO CONSIST

3   OF G.W. HAVING SEX WITH EACH OF THREE DIFFERENT ADULT MAILS,

4   WHICH SHE DID IN AN UPSTAIRS ROOM IN THE HOUSE.  MR. ATKINS

5   ALSO HAD 15 YEAR OLD G.W. PERFORM ORAL SEX ON HIM.

6          MR. ATKINS THEN TOOK G.W. AND L.P. TO THE MOTEL SIX ON

7   CARIBBEAN BOULEVARD IN CUTLER BAY WHERE HE DROPPED THEM OFF

8   WITH SANDRA SIMON WHO IS MR. ATKINS' CODEFENDANT AND ALSO A

9   PROSTITUTE WORKING FOR HIM.

10         ONCE THERE SANDRA SIMON TOOK PICTURES OF G.W. AND L.P.

11  IN PROVOCATIVE POSES AND POSTED ADVERTISEMENTS OFFERING G.W.

12  AND L.P. FOR SEX ON BACKPAGE.COM.

13         OVER THE NEXT SEVERAL DAYS G.W. AND L.P. CONDUCTED

14  MULTIPLE PROSTITUTION DATES AT THE MOTEL SIX WHERE MR. ATKINS

15  RETURNED ON MULTIPLE OCCASIONS AT LEAST ONCE TO PICK UP MONEY

16  FROM SIMON THAT HAD BEEN EARNED THROUGH PROSTITUTION AND ON

17  OTHER OCCASIONS TO PROVIDE A PREPAID CELLPHONE THAT G.W. AND

18  L.P. WAS SUPPOSED TO USE TO ARRANGE FOR THEIR PROSTITUTION

19  DATES.

20         ON THE NIGHT OF AUGUST 15TH AND CONTINUING TO THE

21  EARLY MORNING OF AUGUST 16TH, MR. ATKINS ENGAGED IN A TEXT

22  MESSAGE EXCHANGE WITH A CORRESPONDENT SAVED IN HIS CELLPHONE

23  CONTACT LIST AS LIDO, IN WHICH LIDO ESSENTIALLY URGED

24  MR. ATKINS TO BRING G.W. AND L.P. TO WORK WITH HIM BUT

25  MR. ATKINS RESPONDED THAT HE COULDN'T BE SEEN WITH THEM BECAUSE

1 THEY WERE MINORS.

2      AT THIS POINT I WOULD ASK -- I WOULD ASK THE COURT TO

3 TURN ITS ATTENTION TO GOVERNMENT EXHIBIT 1.  ALL OF THE

4 GOVERNMENT EXHIBITS ARE JUST EXCERPTS OF TEXT MESSAGES THAT

5 WERE OBTAINED FROM MR. ATKINS' CELLPHONE PURSUANT TO A SEARCH

6 WARRANT AFTER HE WAS ARRESTED.  I AM NOT GOING TO READ ALL OF

7 THE TEXT MESSAGES, BUT EXHIBIT 1 IS AN EXCHANGE BETWEEN

8 MR. ATKINS AND LIDO.  STARTING AT THE TOP THE COURT CAN SEE

9 THAT'S A MESSAGE TO LIDO.

10      HE SAYS, I GOT THEM.

11      LIDO RESPONDS, COME HURRY.  IT'S STRAIGHT HERE.  HE

12 THEN SAYS, YOU SHOULD BRING THEM IN HERE AND LET THEM WORK

13 SATURDAY AND YOU PAY ME SATURDAY.

14      MR. ATKINS' RESPONSE, LOL.  NO, I CAN'T BE SEEN WITH

15 THEM.

16      LIDO SAYS, MAN, WHO GOING TO TELL HERE?

17      MR. ATKINS SAYS, CO-WORKERS BUT AM OUTSIDE.  AND, OF

18 COURSE, THE CO-WORKERS IN THIS CASE WOULD BE OTHER PEOPLE

19 WORKING AT THE FLORIDA KEYS CHILDRENS SHELTER.

20      NOW, DURING THE PERIOD IN WHICH G.W. AND L.P.

21 CONDUCTED PROSTITUTION DATES TOGETHER WITH SANDRA SIMON,

22 MR. ATKINS AND SIMON ENGAGED IN TEXT MESSAGE CONVERSATIONS

23 ABOUT THEIR PROGRESS IN TRAFFICKING G.W. AND L.P.

24      MR. ATKINS REPEATEDLY INQUIRED AND WAS TOLD BY SIMON

25 WHETHER DATES WERE BEING CONDUCTED, HOW MUCH MONEY WAS BEING

1  MADE, WHETHER THE PHONE THAT HE PROVIDED WAS WORKING PROPERLY,

2  AND SO FORTH.  AT VARIOUS TIMES IN THESE CONVERSATIONS BOTH

3  G.W. AND L.P. WERE REFERRED TO BY THEIR ACTUAL FIRST NAMES,

4  THEIR TRUE FIRST NAMES.

5      MR. ATKINS ALSO WARNED SIMON TO DELETE THE TEXT

6  MESSAGES, AND MR. ATKINS IN FACT DID DELETE HIS OWN TEXT

7  MESSAGES BUT THEY WERE RECOVERED BY FORENSIC INVESTIGATORS

8  NEVERTHELESS.

9      GOVERNMENT EXHIBIT 2 IS AN EXCERPT OF SOME OF THE TEXT

10 MESSAGES THAT WENT BACK AND FORTH BETWEEN MR. ATKINS AND HIS

11 CODEFENDANT SANDRA SIMON.  STARTING AT THE TOP OF THE FIRST

12 PAGE THE COURT CAN SEE MR. ATKINS SENDS MISS SIMON A TEXT

13 MESSAGE ASKING WHAT IT LOOKED LIKE.  HE GETS A RESPONSE BACK

14 FROM MISS SIMON READING, THE BLOND GIRL DID ONE CALL FOR ONE

15 FORTY LAST NIGHT AND THEY GOT CALLS FOR TODAY.

16      TURNING TO THE SECOND PAGE.  THIS IS GOING INTO THE

17 NEXT DAY NOW, THE 17TH.  ON PAGE TWO OF EXHIBIT 2, THE THIRD

18 TEXT DOWN MR. ATKINS SENDS A MESSAGE TO MISS SIMON.  HE ASKS,

19 HOW IT'S GOING.

20      SHE RESPONDS, SLOW, TO WHICH MR. ATKINS SAYS, DAMN.

21 BUT THEN ABOUT AN HOUR LATER SHE REPORTS ONE OF THEM JUST DID A

22 CALL AND MR. ATKINS RESPONDS GOOD.

23      GOING ON TO THE THIRD PAGE.  LATER ON -- LATER ON THAT

24 DAY THE FOURTH TEXT ON THE THIRD PAGE MR. ATKINS SENDS TO MISS

25 SIMON, HE SPELLS IT A.D.Y., BUT I THINK IT'S MEANT TO BE ANY

1  GOOD NEWS.

2      SIMON RESPONDS, L.P., AND HERE SIMON USED THE ACTUAL

3  FIRST NAME OF L.P. BUT I HAVE REDACTED IT.  BUT L. MADE ONE

4  SIXTY.  SHE SAYS, WELL, ONE FIFTY.  SHE TOOK TEN TO EAT.  AND

5  THEN MR. ATKINS RESPONDS, MAKE SURE YOU DELETE THESE TEXTS, AND

6  AS I MENTIONED THEY WERE FACT DELETED.

7      FINALLY, YOUR HONOR, THE LAST BIT WITH RESPECT TO THE

8  TEXT MESSAGES FOR NOW, BECAUSE I THINK IT'S RELEVANT TO THE

9  QUESTION OF DETENTION.

10      EARLIER ON AUGUST 15TH BEFORE MR. ATKINS WENT DOWN TO

11  TAVERNIER AND PICKED UP G.W. AND L.P. FROM THE SHELTER WHERE HE

12  WORKED, MR. ATKINS HAD ACTUALLY DISCUSSED WITH MISS SIMON THE

13  RESOLUTION OF A CASE THAT MISS SIMON HAD IN STATE COURT TO

14  WHICH SHE HAPPENED TO ENTER A GUILTY PLEA IN STATE COURT ON

15  AUGUST 15TH ON THAT DAY.

16      THE CRIME TO WHICH MISS SIMON HAD PLED GUILTY WAS

17  PROCURING A MINOR FOR PROSTITUTION.  AND DURING THAT DAY

18  MR. ATKINS CHECKED IN ON MISS SIMON TO KNOW WHAT HAD HAPPENED

19  TO HER ON THE DATE THAT SHE WAS SUPPOSED TO ENTER A GUILTY

20  PLEA.  SHE DID AND SHE RECEIVED A SENTENCE OF FIVE YEARS

21  PROBATION, THE SAME NIGHT THAT MR. ATKINS DELIVERED G.W. AND

22  L.P. TO HER.

23      I WOULD JUST ASK THE COURT TO EXACT GOVERNMENT'S

24  EXHIBIT 3, AND STARTING FROM THE TOP YOU CAN SEE -- THE COURT

25  CAN SEE IT'S THE MORNING OF AUGUST 15TH NOW AND MR. ATKINS SAYS

1   TO MISS SIMON, GOOD LUCK ON COURT.

2          SHE SAYS, THANK YOU.  AND THEN SEVERAL HOURS LATER

3   CLOSER TO THE END OF THE DAY HE SAYS, YOU GOOD?

4          MISS SIMON SAYS, YES.

5          HE SAYS, WHAT HAPPENED?

6          SHE SAYS, THEY GAVE ME FIVE YEARS PROBATION BUT THEY

7   MADE IT SO IT WON'T SHOW IN MY BACKGROUND AND DROPPED TWO OF MY

8   CHARGES, AND THEY HAVE A BRIEF FURTHER DISCUSSION ABOUT THE

9   FACT THAT SHE RECEIVED PROBATION FOR HER PROCURING A MINOR FOR

10  PROSTITUTION CASE.

11         NOW, AFTER SEVERAL NIGHTS AT THE MOTEL SIX G.W., L.P.

12  AND MISS SIMON DID TRAVEL TO MULTIPLE OTHER HOTELS WHERE G.W.

13  AND L.P. CONTINUED TO CONDUCT PROSTITUTION DATES UNDER SIMON'S

14  AND ATKINS' ULTIMATE SUPERVISION.

15         G.W. AND L.P. ULTIMATELY LEFT SIMON AND CAME TO BE IN

16  THE CUSTODY OF ANOTHER ADULT COUPLE WHO ALSO PROSTITUTED G.W.

17  AND L.P. IN BOTH THE MIAMI AREA AND THE TAMPA AREA.

18         THE MINOR VICTIMS G.W. AND L.P. WERE FINALLY RECOVERED

19  AFTER THEY WERE PASSENGERS IN A CAR BEING DRIVEN BY THAT ADULT

20  COUPLE IN A CAR ACCIDENT IN SARASOTA COUNTY TO WHICH LAW

21  ENFORCEMENT RESPONDED AND DID RECOVER G.W. AND L.P.

22         AFTER THE RECOVERY THEY WERE RETURNED.  BEFORE

23  MR. ATKINS' INVOLVEMENT WAS KNOWN THEY WERE RETURNED TO THE

24  KEYS CHILDREN SHELTER WHERE MR. ATKINS WAS STILL WORKING.  AT

25  THAT TIME MR. ATKINS CAME IN CONTACT WITH G.W. AND ASKED HER IF

1 SHE AGAIN WANTED TO RUN AWAY TO PROSTITUTE THIS TIME IN ATLANTA

2 WHERE MR. ATKINS HAS SOME TIES.

3 　　　　MR. ATKINS WAS LATER ARRESTED.  IN AN INTERVIEW AFTER

4 HIS ARREST MR. ATKINS SAID ONLY THAT HE HAD -- HE SAID THAT HE

5 HAD INDEED SEEN G.W. AND L.P. OUT IN HOMESTEAD ON THE NIGHT OF

6 AUGUST 15TH, BUT HE DENIED TRANSPORTING THEM THERE FROM THE

7 SHELTER.  HE SAID THAT HE HAD ONLY ENCOUNTERED THEM THERE IN

8 THE MIDDLE OF THE NIGHT COINCIDENTALLY.

9 　　　　BUT MR. ATKINS NEVER REPORTED COMING INTO CONTACT WITH

10 MINORS WHO RESIDED AT THE VERY CHILDRENS SHELTER WHERE HE

11 WORKED IN THE SAFETY OF WHOSE CHILDREN HE WAS RESPONSIBLE FOR.

12 　　　　YOUR HONOR, THOSE ARE ALL THE FACTS THAT I HAVE TO

13 PROFFER.  I DO HAVE SOME ARGUMENTS BUT I COULD PAUSE AT THIS

14 POINT IF THE COURT WOULD LIKE TO ALLOW INQUIRY OF THE CASE

15 AGENT.

16 　　　　THE COURT:  RIGHT.  WOULD YOU LIKE TO INQUIRE OF THE

17 CASE AGENT?

18 　　　　MR. RAVINDRAN:  YES, YOUR HONOR.

19 　　　　THE COURT:  ALL RIGHT.  LET'S CALL HIM UP.

20 　　　　MR. SCHLESSINGER:  SPECIAL AGENT AMANDA DETTERLINE.

21 　　　　THE COURT:  ALL RIGHT.

22 　　　　THE CLERK:  RAISE YOUR RIGHT HAND.

23 　　　　(WITNESS SWORN)

24 　　　　THE WITNESS:  I DO.

25 　　　　THE CLERK:  YOU MAY BE SEATED.

1             THE WITNESS:  THANK YOU.

2             THE CLERK:  PLEASE STATE YOUR FULL NAME FOR THE RECORD

3    AND SPELL YOUR LAST NAME.

4             THE WITNESS:  IT'S AMANDA DETTERLINE SPELLED

5    D-E-T-T-E-R-L-I-N-E.

6             THE COURT:  GO AHEAD.

7             MR. RAVINDRAN:  THANK YOU, YOUR HONOR.

8                       AMANDA DETTERLINE,

9    BEING DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:

10                      CROSS EXAMINATION

11   BY MR. RAVINDRAN:

12   Q.  GOOD MORNING, SPECIAL AGENT.

13   A.  GOOD MORNING.

14   Q.  IT'S DETTERLINE?

15   A.  DETTERLINE, YES.

16   Q.  OKAY.  SPECIAL AGENT DETTERLINE, WERE YOU PRESENT FOR THE

17   GOVERNMENT'S PROFFER?

18   A.  YES, I WAS.

19   Q.  DO YOU HAVE ANYTHING SPECIFIC THAT YOU WOULD LIKE TO ADD TO

20   THAT PROFFER?

21   A.  NO, I DON'T.

22   Q.  AT THIS TIME YOU ADOPT THAT TESTIMONY AS YOUR OWN?

23   A.  YES.

24   Q.  OKAY.  THANK YOU.

25             SPECIAL AGENT, MR. ATKINS WAS TAKEN INTO STATE CUSTODY

1    IN A PARALLEL STATE CASE, ISN'T THAT CORRECT?

2    A.   THAT'S CORRECT.

3    Q.   AND THAT HAPPENED AROUND SEPTEMBER 10TH?

4    A.   YES.

5    Q.   AND HE WAS DETAINED IN STATE CUSTODY FOR ABOUT A DAY?

6    A.   I'M NOT SURE WHEN HE BONDED OUT.

7    Q.   OKAY.

8    A.   THAT SOUNDS ABOUT RIGHT.

9    Q.   SO THERE WAS A BOND IN THAT CASE.

10   A.   I BELIEVE SO, YES.

11   Q.   ALL RIGHT.  ARE YOU FAMILIAR WITH THE FACT THAT IT WAS A

12   $50,000 BOND?

13   A.   I AM NOT.

14   Q.   ARE YOU FAMILIAR THE FACT THAT THERE IS A BOND AGENT

15   INVOLVED -- A BONDSMAN IN THAT CASE?

16   A.   HE DID ASK ME A LITTLE BIT ABOUT HIS BOND.  AND SO, YES, HE

17   SAID HE HAD A BONDSMAN.  I'M NOT FAMILIAR WHO THAT PERSON IS.

18   Q.   ARE YOU AWARE THAT THE FAMILY PAID ABOUT $5,000 IN CASH TO

19   THE BONDSMAN?

20   A.   NO.  I'M NOT AWARE OF THAT.

21   Q.   ALL RIGHT.  TO YOUR KNOWLEDGE HAS MR. ATKINS BREACHED ANY

22   ASPECT OF HIS STATE PRETRIAL RELEASE?

23   A.   TO MY KNOWLEDGE, NO.

24   Q.   AND TO YOUR KNOWLEDGE MR. ATKINS HAS APPEARED IN STATE

25   COURT THREE TIMES IN THE TIME AFTER SEPTEMBER 10TH?

14

 1  A.  I DON'T KNOW HOW MANY TIMES HE HAS BEEN TO STATE COURT.

 2  Q.  OKAY.  THE STATE CHARGES ARE FELONY CHARGES, CORRECT?

 3  A.  I BELIEVE ONE OF THEM IS, YES.

 4  Q.  HOW MANY ARE THERE?

 5  A.  I WOULD HAVE TO LOOK AT HIS HISTORY.

 6  Q.  OKAY.  AND ARE YOU AWARE THAT THE CHILDRENS SHELTER THAT

 7  WAS MENTIONED IN THE GOVERNMENT'S PROFFER ACTUALLY SOUGHT A

 8  RESTRAINING ORDER AGAINST MR. ATKINS AFTER THEY TERMINATED HIM

 9  WHILE THE STATE CASE WAS PENDING?

10  A.  I AM NOT AWARE OF THAT.

11  Q.  OKAY.  THERE WAS SOME MENTION OF ADMISSIONS OR STATEMENTS

12  MADE TO YOU, IS THAT CORRECT?

13  A.  SAY THAT AGAIN?

14  Q.  THERE WAS A MENTION THAT MR. ATKINS DID MAKE AN ADMISSION

15  OR A STATEMENT TO YOU.

16  A.  YES.

17  Q.  ARE YOU FAMILIAR WITH ANY STATEMENTS OR ADMISSIONS THAT

18  MR. ATKINS MADE TO STATE LAW ENFORCEMENT AUTHORITIES?

19  A.  I WAS THERE THE NIGHT OF THE 1OTH.  SO, YES, I AM AWARE OF

20  THAT.

21  Q.  OH, YOU WERE PRESENT ON SEPTEMBER 1OTH.

22  A.  YES.

23  Q.  OKAY.  THE STATEMENTS THAT HE MADE TO LIKE I SUPPOSE YOU

24  AND STATE LAW ENFORCEMENT AUTHORITIES?

25  A.  YES.

1    Q.  WERE THOSE VIDEOTAPED?

2    A.  YES, THEY WERE.

3    Q.  OKAY.  AND THAT WAS -- THAT OCCURRED WHERE?

4    A.  AT THE MONROE COUNTY SHERIFF'S OFFICE.

5    Q.  ALL RIGHT.  THE ALLEGED VICTIMS IN THE STATE CASE ARE IN

6    FACT THE SAME TWO FEMALES MENTIONED IN THIS CASE.

7    A.  THAT'S CORRECT.

8    Q.  ALL RIGHT.  AND THERE ARE NO OTHER VICTIMS IN THE STATE

9    CASE THAN THERE ARE IN THE FEDERAL CASE.

10   A.  NOT THAT I'M AWARE OF, NO.

11   Q.  ALL RIGHT.  AND HOW DID FEDERAL AUTHORITIES FIRST BECOME

12   AWARE OF MR. ATKINS' INVOLVEMENT?

13   A.  WE WERE ADVISED THROUGH THE STATE OF THE INCIDENTS THAT

14   WERE OCCURRING WITH G.W. AND L.P.

15   Q.  AND IT'S FAIR TO SAY THAT FEDERAL AUTHORITIES, PERHAPS YOU,

16   KNEW AS OF SEPTEMBER 10TH THAT HE HAD MADE A STATE BAIL?

17   A.  THAT HE MADE A BAIL ON THE 10TH?

18   Q.  OR SHORTLY THEREAFTER.

19   A.  YEAH, I GUESS THAT'S FAIR TO SAY.

20   Q.  OKAY.  THE FIRST TIME EITHER OF THE MINORS INVOLVED IN THIS

21   CASE MADE AN ALLEGATION OF PROSTITUTION WAS AFTER AUGUST 24TH,

22   IS THAT CORRECT?

23   A.  IT WAS AFTER THE 24TH, CORRECT.

24   Q.  AND AFTER THE 24TH THEY WERE IN FACT NOT IN THIS

25   JURISDICTION, THEY WERE IN SARASOTA.

1  A.  AFTER THE 24TH I BELIEVE THEY WERE TRANSPORTED BACK DOWN TO

2  THE SOUTHERN DISTRICT.

3  Q.  BEFORE THEY WERE TRANSPORTED AT SOME POINT THEY WERE IN

4  SARASOTA --

5  A.  THEY WERE RECOVERED IN SARASOTA, YES.

6  Q.  AT THE TIME THEY WERE RECOVERED THEY WEREN'T WITH

7  MR. ATKINS AT ALL.

8  A.  AT THE TIME?  NO.

9  Q.  BUT THEY DID HAVE SOME INVOLVEMENT WITH LAW ENFORCEMENT

10  AUTHORITIES UP THERE, IS THAT CORRECT?

11  A.  YES.

12  Q.  IN FACT, THEY HAD BEEN INVOLVED IN SOME FASHION IN A

13  HIT-AND-RUN ACCIDENT.

14  A.  YES.

15  Q.  AND IT'S ONLY AFTER THIS HIT-AND-RUN THAT IT COMES TO LIGHT

16  THAT THEY BROUGHT IT TO SOMEONE'S ATTENTION THAT THEY WERE

17  INVOLVED IN PROSTITUTION.

18  A.  YES.

19  Q.  OKAY.  PART OF THE GOVERNMENT'S PROFFER INVOLVED A

20  STATEMENT THAT THE 15 YEAR OLD WAS MADE TO PERFORM ORAL SEX ON

21  MR. ATKINS, IS THAT CORRECT?

22  A.  YES.

23  Q.  AND THE REASON THE GOVERNMENT BELIEVES THAT'S THE CASE IS

24  BECAUSE THE 15 YEAR OLD SAID IT WAS, RIGHT?

25  A.  YES.

1   Q.  THERE IS NO OTHER EVIDENCE TO CORROBORATE THAT STATEMENT.

2   A.  NO.

3   Q.  THIS 15 YEAR OLD HAS A HISTORY OF RUNNING AWAY?

4   A.  I BELIEVE SHE HAS RUN AWAY BEFORE, YES.

5   Q.  THE PROSECUTOR ALSO MENTIONED MR. ATKINS' TIES TO ATLANTA?

6   A.  YES.

7   Q.  WOULD YOU PLEASE EXPLAIN TO THE COURT THE NATURE OF THOSE

8   TIES.

9   A.  HE STATED THAT HE HAS FAMILY IN ATLANTA.

10  Q.  WHO SPECIFICALLY?

11  A.  HIS DAUGHTER I BELIEVE.

12  Q.  A DAUGHTER THAT HE HAS WITH A WOMAN WHO LIVES THERE?

13  A.  I BELIEVE SO BUT I DON'T KNOW.  HE DIDN'T ACTUALLY MENTION

14  THE NAMES OF HIS FORMER MOTHER OF HIS CHILD AND THE CHILD'S

15  NAME.

16  Q.  OKAY.  MR. ATKINS' DAUGHTER IN ATLANTA IS SIX YEARS OLD?

17  A.  I BELIEVE SO, YES.

18  Q.  ALL RIGHT.  SO WHEN THE GOVERNMENT SAYS THAT MR. ATKINS

19  OFFERED ONE OF THE MINOR FEMALES THE OPPORTUNITY TO TRAVEL TO

20  ATLANTA, HIS CONNECTION IN ATLANTA IS A SIX YEAR OLD, IS THAT

21  RIGHT?

22  A.  I CAN'T SPECULATE THAT.  I DON'T KNOW WHAT HIS CONNECTIONS

23  ARE UP THERE.  HE JUST OFFERED THAT HE WOULD TAKE HER TO

24  ATLANTA.

25  Q.  OKAY.  ONE MOMENT, SPECIAL AGENT.

1  A.  NO PROBLEM.

2          MR. RAVINDRAN:  YOUR HONOR, MAY I HAVE A FEW MINUTES?

3          THE COURT:  SURE.

4  BY MR. RAVINDRAN:

5  Q.  THANKS, SPECIAL AGENT.  I HAVE NOTHING FURTHER.

6  A.  THANK YOU.

7          THE COURT:  ALL RIGHT.  ANY REDIRECT?

8          MR. SCHLESSINGER:  NO QUESTIONS, YOUR HONOR.

9          THE COURT:  ALL RIGHT.  MA'AM, YOU ARE EXCUSED.  THANK

10 YOU VERY MUCH.

11         ANY FURTHER EVIDENCE?  ANY FURTHER PROFFERS BY WAY OF

12 EVIDENCE?

13         MR. SCHLESSINGER:  NONE FROM THE GOVERNMENT, YOUR

14 HONOR.

15         THE COURT:  ALL RIGHT.

16         MR. RAVINDRAN:  ALL RIGHT.  YOUR HONOR, WE HAVE --

17 WITH NO OTHER EVIDENCE AT THIS TIME WE HAVE SOME ARGUMENT,

18 THOUGH.

19         THE COURT:  OKAY.  LET'S HEAR FROM THE GOVERNMENT BY

20 WAY OF ARGUMENT FIRST.

21         MR. SCHLESSINGER:  YOUR HONOR, THE GOVERNMENT IS

22 SEEKING PRETRIAL DETENTION TO BOTH GROUNDS, BOTH RISK OF FLIGHT

23 AND DANGER TO THE COMMUNITY.

24         I WOULD FIRST NOTE THAT AS TO BOTH GROUNDS THIS IS A

25 CASE IN WHICH A STATUTORY PRESUMPTION APPLIES THAT MR. ATKINS

1  SHOULD BE DETAINED PURSUANT TO SECTION 3142(E)(3)(E).

2       WITH RESPECT TO RISK OF FLIGHT THERE ARE SEVERAL

3  FACTORS I THINK WORTH HIGHLIGHTING.

4       ONE IS THE FACT -- I THINK THIS IS AMONG THE MOST

5  SIGNIFICANT IS THE FACT THAT MR. ATKINS COMMITTED THIS OFFENSE

6  WHILE HE WAS ACTUALLY ON BOND FOR ANOTHER CASE.  THAT WAS A

7  DISORDERLY CONDUCT.  THAT CASE WAS SINCE DISMISSED -- SINCE

8  BEEN DISMISSED IN OCTOBER, BUT AT THE TIME OF ALL OF THE EVENTS

9  THAT HAD BEEN DESCRIBED HERE IN AUGUST MR. ATKINS HAD A PENDING

10 CASE AND WAS CURRENTLY ON BOND FOR THAT CASE.

11      SO I THINK IT IS VERY, VERY DIFFICULT FOR MR. ATKINS

12 NOW HAVING COMMITTED THIS GROSSLY, MORE VASTLY, MORE SERIOUS

13 OFFENSE WHILE HE WAS ON BOND FOR HIS LAST CASE TO NOW COME INTO

14 COURT AND SAY HE IS ABLE TO REBUT THE PRESUMPTION THAT EXISTS

15 IN FAVOR OF HIS DETENTION.

16      SO MR. ATKINS NOT ONLY COMMITTED THE OFFENSE WHILE HE

17 WAS HIMSELF ON BOND BUT HE ALSO COMMITTED THE OFFENSE OF

18 PROVIDING THESE MINORS TO MISS SIMON TO BE PROSTITUTED KNOWING

19 THAT MISS SIMON WAS HERSELF ON PROBATION AND HAD IN FACT THAT

20 VERY DAY COMMENCED A TERM OF PROBATION FOR PROCURING MINORS FOR

21 PROSTITUTION.

22      SO AGAIN, MR. ATKINS IS HIMSELF ON BOND IS ON BOND,

23 HE'S PROVIDING THE MINORS TO MISS SIMON WHO IS ON PROBATION FOR

24 PROCURING MINORS FOR PROSTITUTION.  HE IS UNABLE TO REBUT THE

25 PRESUMPTION IN FAVOR OF HIS DETENTION.

1           ON TOP OF THOSE CONSIDERATIONS IS THE FACT THAT EACH

2    OF THE COUNTS -- EACH OF THE SUBSTANTIVE COUNTS OF SEX

3    TRAFFICKING, COUNTS 2 AND 3 IN THE INDICTMENT CARRY A 1O YEAR

4    MANDATORY MINIMUM SENTENCE.  I DON'T MEAN TO SUGGEST THAT THEY

5    WOULD HAVE TO BE CONSECUTIVE TO EACH OTHER BUT THERE IS A 10

6    YEAR MANDATORY MINIMUM SENTENCE IN MR. ATKINS' CASE IF HE IS

7    CONVICTED.  THERE IS A STATUTORY LIFE.

8           MY PRELIMINARY CALCULATIONS AS TO MR. ATKINS'

9    GUIDELINES IF HE WERE TO PROCEED TO TRIAL AND BE CONVICTED

10   WOULD BE ALONG THE LINES OF 324 TO 405 MONTHS.

11          THE EVIDENCE IN THE CASE IS QUITE STRONG.  THERE IS A

12   VERY SUBSTANTIAL INCENTIVE TO FLEE, AND THERE IS NO -- ACTUALLY

13   NO INCENTIVE FOR HIM TO COMPLY WITH HIS BOND AS IT APPEARS AS

14   HE HAS ALREADY FAILED TO COMPLY WITH CONDITIONS OF HIS BOND IN

15   THE LAST CASE IN WHICH HE WAS RELEASED ON A BOND BY COMMITTING

16   ANOTHER VERY SERIOUS OFFENSE.

17          AS TO DANGER TO THE COMMUNITY THERE IS -- THIS IS, OF

18   COURSE, AN INCREDIBLY SERIOUS CRIME.  IT INVOLVES MINOR

19   VICTIMS -- MULTIPLE MINOR VICTIMS IN THIS CASE.  IT INVOLVES

20   MR. ATKINS HAVING A MINOR FEMALE -- NOT ONLY TRAFFICKING THEM

21   AND PROCURING THEM FOR PROSTITUTION BUT ACTUALLY HAVING A MINOR

22   FEMALE PERFORM A SEXUAL ACT ON HIM.

23          PROSTITUTION OF BOTH MINORS AND OTHER WOMEN IS MAJOR

24   MEANS OF SUPPORT FOR MR. ATKINS WHO NO LONGER, OF COURSE, HAS A

25   JOB AT THE FLORIDA KEYS CHILDRENS SHELTER AFTER THE EVENTS THAT

1  HAD BEEN DISCUSSED.

2       SO THE DANGER THAT HE IS GOING TO RESORT TO THAT AS A

3  MEANS OF INCOME IF HE WERE RELEASED ON BOND IS INCREASED.  AND,

4  OF COURSE, MR. ATKINS IF HE WERE RELEASED PRESUMABLY WOULD LIVE

5  AT HOME WHERE HE LIVES AGAIN WITH MULTIPLE CHILDREN.  SO I

6  THINK THE PRESUMPTION IN FAVOR OF DANGER TO THE COMMUNITY IS

7  AMPLY SUPPORTED AS WELL.

8       IN LIGHT OF ALL OF THOSE FACTORS THE GOVERNMENT

9  SUGGESTS THAT MR. ATKINS BE DETAINED PENDING TRIAL.

10      THE COURT:  ALL RIGHT.  THE RESPONSE?

11      MR. RAVINDRAN:  YOUR HONOR, RICKY ATKINS DOESN'T

12  IMPOSES A LOW RISK OF FLIGHT.  HE IS NOT A DANGER TO THE

13  COMMUNITY.  AND WHILE THERE IS A LEGAL PRESUMPTION IT'S BEEN

14  SQUARELY REBUTTED BASED ON THE RECORD I HAVE HAD ON BOTH PRONGS

15  OF THE THREE ONE FOUR TWO ANALYSIS.

16      HIS CONTINUED DETENTION IS UNWARRANTED.  AND IN LIEU

17  OF THAT, YOUR HONOR, WE PROPOSE A BOND SIGNED BY CO-SIGNERS,

18  ELECTRONIC MONITORING, AND ANY OTHER CONDITIONS THAT YOUR HONOR

19  DEEMS APPROPRIATE TO SATISFY BOTH ASPECTS OF THE THREE ONE FOUR

20  TWO ANALYSIS.

21      YOUR HONOR, AS YOU HEARD FROM THE AGENT THERE IS

22  ALREADY A STATE BAIL INVOLVED IN THE PARALLEL STATE CASE.  I AM

23  NOT SPEAKING ABOUT THE BAIL IN THE MISDEMEANOR, BUT THE BAIL ON

24  THE FELONY CASE, YOUR HONOR, A $50,000 BOND THAT'S BEEN PUT UP

25  BY A BAIL BONDSMAN.  SO THE MORE IMPORTANT ASPECT OF IT IS THAT

1  THERE IS A BAIL BONDSMAN INVOLVED IN THIS CASE, AND MR. ATKINS

2  HAS MET EVERY CONDITION OF HIS STATE BAIL.

3  WHILE IT'S TRUE THAT HIS FEDERAL SENTENCING EXPOSURE

4  IS SUBSTANTIALLY HIGHER, THE GOVERNMENT'S RELIANCE ON THAT

5  ASPECT OF IT PROBABLY OVERSTATES HOW IMPORTANT THAT

6  CONSIDERATION WOULD BE TO YOUR HONOR WHEN YOU CONSIDER WHO THIS

7  DEFENDANT -- WHO RICKY ATKINS IS.

8  RICKY ATKINS IS 28 YEARS OLD, YOUR HONOR.  RICKY

9  ATKINS WAS BORN IN DADE COUNTY.  HE HAS RESIDED IN DADE COUNTY

10 AND MONROE COUNTY HIS ENTIRE LIFE.  HE IS FROM A STRONG

11 MATRIARCHAL FAMILY.  HIS GRANDMOTHER IS PRESENT IN COURT AND

12 SHE IS RIGHT THERE.  SHE CAME HERE OBVIOUSLY AT GREAT

13 DIFFICULTY.  HIS MOTHER IS SEATED NEXT TO HIM.

14 HE DOESN'T HAVE ANY MEANINGFUL CONNECTIONS -- ANY

15 CONNECTIONS OUTSIDE OF THIS JURISDICTION.  I HAS A SIX YEAR OLD

16 DAUGHTER IN ATLANTA.  THERE WASN'T A LITANY OF SOCIAL CONTACTS

17 THAT WAS BROUGHT UP BY THE AGENTS, PLACES HE COULD GO.  HE HAS

18 NO PASSPORT AS INDICATED BY THE PRETRIAL SERVICES REPORT.  HE'S

19 GOT NO MEANINGFUL ASSETS.

20 YOUR HONOR, WHILE HIS SENTENCING EXPOSURE IS HIGH,

21 UNDER 3142 YOUR HONOR DOESN'T MERELY TAKE A MECHANISTIC

22 APPROACH TO SEE HOW LONG HE IS FACING AND THEN MAKE A

23 DETERMINATION FROM THERE.

24 EVEN IF HIS EXPOSURE WAS 10 TIMES AS HIGH AS IT IS,

25 RICKY ATKINS WOULD BE PRESENT IN COURT.  AND CONTRARY TO WHAT

1  THE GOVERNMENT'S POSITION IS THERE IS NOT A SCINTILLA OF RECORD

2  EVIDENCE AT THIS TIME WHICH MAKES IT MORE LIKELY THAN NOT THAT

3  HE WOULD WOULDN'T BE HERE FOR FURTHER PROCEEDINGS.

4         MR. ATKINS' FIANCEE MELODY IS ALSO PRESENT.  AS THE

5  GOVERNMENT MENTIONED HE HAS THREE YOUNG CHILDREN.  ANOTHER

6  THING I THINK YOUR HONOR SHOULD KNOW IS THAT MR. ATKINS DOES

7  HAVE A JOB.  HE STARTED TWO WEEKS AGO AT A COMPANY CALLED

8  RONNIE'S FENCE COMPANY.  RONNIE'S FENCE COMPANY IS AN

9  ESTABLISHED COMPANY IN THE UPPER KEYS.  IT'S A FAMILY OWNED

10  BUSINESS.  IT HAS BEEN AROUND FOR 40 YEARS.  AND I HAVE

11  PERSONALLY SPOKEN WITH MR. RONALD WILLIAMS WHO IS THE OWNER OF

12  THE COMPANY AND RUNS IT WITH HIS TWO SONS.  MR. WILLIAMS TOLD

13  ME THAT HE KNOWS I KNOWS ABOUT THE CHARGES, NUMBER ONE.

14         NUMBER TWO, IN THE TWO WEEKS THAT HE HAD MR. ATKINS ON

15  BOARD HE FOUND MR. ATKINS TO BE A GOOD WORKER, A DEDICATED

16  WORKER, SOMEBODY WHO IS COURTEOUS AND PUNCTUAL.  AND I SAID,

17  MR. WILLIAMS, WHAT IF THE JUDGE ALLOWED MR. ATKINS OUT WILL HE

18  HAVE A JOB ON TUESDAY MORNING?  THE ANSWER WAS A RESOUNDING

19  YES, YOUR HONOR.

20         IT'S NOT THE BEST JOB.  IT PAYS $10 AN HOUR BUT IT'S A

21  JOB NONETHELESS.  AND AS THE COURT IS WELL AWARE EMPLOYMENT IS

22  REALLY ONE OF THE KEYSTONE METRICS, AND A LOT OF CONSIDERATION

23  RECIDIVISM BEING ONE.  BUT I THINK IT ALSO SUGGESTS THAT THIS

24  IS SOMEONE WHO HAS TIES TO THE COMMUNITY THROUGH LONGSTANDING

25  RELATIONSHIP.  TIES TO THE COMMUNITY THROUGH THE FACT THAT HE

1 IS FROM HERE.  HE HASN'T REALLY LEFT, HIS PARENTS AND

2 GRANDPARENTS BEFORE HIM ARE FROM HERE.  HE HAS THREE CHILDREN

3 AND HE HAS A JOB, YOUR HONOR.

4          SO FOR ALL OF THOSE REASONS HE DOESN'T ACTUALLY POSE

5 ANY KIND OF RISK OF FLIGHT FROM THIS JURISDICTION OR

6 NONAPPEARANCE.  TO THE EXTENT THERE IS A PRESUMPTION IT'S

7 REBUTTABLE.  WE'VE REBUTTED IT.

8          LOOKING NOW AT DANGER TO THE COMMUNITY.  IT'S CLEAR

9 THAT MR. ATKINS IS NOT A DANGER.  I WOULD LARGELY STAND ON

10 WHAT'S CONTAINED IN THE PRETRIAL SERVICES REPORT.  THERE ARE

11 SOME MINOR CHARGES, THE MOST SERIOUS BEING A DISORDERLY

12 CONDUCT.  AND THEN THE ALLEGATION FROM THE PARALLEL STATE CASE.

13          TO THE EXTENT THAT THE GOVERNMENT HAS SOUGHT TO

14 PORTRAY MR. ATKINS AS A PREDATOR, YOUR HONOR, THAT POSITION IS

15 BELIED BY THE GOVERNMENT'S OWN ACTIONS IN THIS CASE.

16          THE AGENT HAS BEEN AWARE OF MR. ATKINS PRESENCE IN THE

17 COMMUNITY SINCE AT LEAST SEPTEMBER 11TH AND IT IS ONLY NOW THAT

18 HE IS A DANGER TO THE COMMUNITY.

19          IF HE WAS SO DANGEROUS WHY WOULDN'T THEY SNATCH HIM UP

20 THE MINUTE THE STATE JUDGE CUT HIM LOOSE?

21          THE FEDERAL AND STATE CASES SEEM TO BE IDENTICAL IN

22 THE UNDERLYING FACTS.  THERE ARE NO NEW VICTIMS.  THERE IS NO

23 GOOD REASON FOR WHY THE DISPOSITION OF THE FEDERAL PRETRIAL

24 HEARING SHOULD BE ANY DIFFERENT THAN THE STATE PRETRIAL

25 HEARING, AT LEAST AS FAR AS DANGER TO THE COMMUNITY GOES,

1  SENTENCING EXPOSURE ASIDE.

2         THE ONLY ALLEGATION THAT MR. ATKINS HAS ACTUALLY DONE

3  ANYTHING WITH A CHILD CAME ONLY FROM THE CHILD ITSELF AND

4  TOTALLY UNCORROBORATED.

5         BASED ON THIS RECORD EVIDENCE THERE IS ABSOLUTELY NO

6  GROUNDS TO CONCLUDE THAT MR. ATKINS HAS POSED ANY ACTUAL

7  ARTICULABLE NON THEORETICAL HARM TO G.W., L.P., OR ANY OTHER

8  PERSON INVOLVED.

9         THE ONLY OTHER THING I HAD TO PROFFER, YOUR HONOR, IS

10  THAT MR. ATKINS WAS AWARE OF THE PENDING.  FEDERAL CHARGES FROM

11  AT LEAST THE BEGINNING OF THIS CASE -- THE BEGINNING OF THE

12  STATE CASE BECAUSE THE FBI AGENT WAS INVOLVED.  SO IF HE WOULD

13  HAVE RUN, HE WOULD HAVE RUN A LONG TIME AGO.

14         YOUR HONOR, AGAIN, THIS PRESUMPTION IS REBUTTABLE AND

15  WE HAVE REBUTTED IT.  HE IS A LONG-TERM RESIDENT OF THE

16  DISTRICT, THERE IS A BAIL BONDSMAN INVOLVED, AND THERE ITS NO

17  REASON TO BELIEVE THAT HE WON'T SHOW UP FOR TRIAL, AND THERE IS

18  NOT A SHRED OF EVIDENCE TO CONCLUDE THAT HE IS A DANGER TO THE

19  COMMUNITY.

20         SO TO THE EXTENT THAT THE COURT HAS EVEN A MOMENTS

21  PAUSE ON THE DANGER PRONG WE RESPECTFULLY SUBMIT THAT THAT

22  COULD BE MITIGATED BY ELECTRONIC MONITORING AND ANY OTHER FORM

23  OF PRETRIAL RESTRICTION THAT YOUR HONOR DEEMS APPROPRIATE SHORT

24  OF DETENTION.

25         YOUR HONOR, SO FOR ALL OF THIS IS REASONS WE WOULD

1  SUBMIT THAT CONTINUED DETENTION IN THIS CASE IS INAPPROPRIATE.

2  THANK YOU.

3  THE COURT:  ALL RIGHT.  ANY REPLY, MR. SCHLESSINGER?

4  MR. SCHLESSINGER:  JUST VERY BRIEFLY, YOUR HONOR.

5  AS MOST SIGNIFICANTLY AS TO HARM TO ANY MINOR VICTIMS,

6  MR. ATKINS TRANSPORTED A 15 AND 16 YEAR OLD GIRL TO ANOTHER

7  PERSON TO BE PROSTITUTED OUT OF VARIOUS MOTELS.  SO THERE IS

8  HARM THERE.  THERE IS VERY GRAVE HARM ASSOCIATED WITH THAT.

9  WITH RESPECT TO THE BOND THAT IS SET IN THE STATE

10  CASE.  I KNOW THAT COUNSEL FOR THE DEFENSE EMPHASIZED THE FACT

11  THAT THIS PROCEEDING IS NOT A MECHANISTIC APPROACH.

12  BUT THEN, OF COURSE, DEFENSE COUNSEL EMPHASIZED THE

13  FACT, YOU KNOW, THE COURT IS REQUIRED TO TAKE INTO ACCOUNT

14  MR. ATKINS' VARIOUS PERSONAL CHARACTERISTICS AND THE INDIVIDUAL

15  ASPECTS OF THE CASE AND THAT IS CERTAINLY TRUE.  BUT ON THE

16  OTHER HANDY DEFENSE COUNSEL TURNS AROUND AND POINTS TO THE BOND

17  THAT IS SET IN THE STATE CASE.

18  AS FAR AS I KNOW -- I DON'T KNOW FOR CERTAIN BUT AS

19  FAR AS I KNOW THAT WAS A MECHANISTIC PROCESS AND IT ENTAILS

20  JUST A BOND THAT'S AUTOMATICALLY SET BY THE -- BASED UPON THE

21  NATURE OF THE CHARGE.

22  THE NATURE OF THE CHARGE IN THAT CASE IS INTERFERENCE

23  WITH THE CUSTODY OF A MINOR.  SO IT HAS NOTHING TO DO WITH

24  PROSTITUTION, NOTHING TO DO WITH CHILD SEX TRAFFICKING WHICH

25  ARE THE CHARGES IN THIS CASE.

1    I KNOW THE COURT IS ALREADY AWARE, AND I'M SURE DEALS

2  WITH THIS ISSUE VERY FREQUENTLY, BUT THERE ARE MANY DIFFERENCES

3  IN THE SITUATION.  THERE IS A PRESUMPTION IN THIS CASE, THERE

4  ARE DIFFERENT STANDARDS TO BE APPLIED IN FEDERAL COURT.  AND I

5  THINK MOST THE SIGNIFICANT OF WHICH IS MR. ATKINS' SENTENCING

6  EXPOSURE, WHICH I FEEL CERTAIN PROBABLY DOES NOT FACE ANYTHING

7  LIKE THE AMOUNT OF TIME IN THE STATE CASE THAT HE NOW DOES HERE

8  IN HERE IN FEDERAL COURT.

9    THE COURT:  ALL RIGHT.  ANYTHING ELSE FROM EITHER

10  SIDE?

11    MR. RAVINDRAN:  MAY I HAVE ONE MOMENT TO CONFER, YOUR

12  HONOR?

13    NOTHING FURTHER, YOUR HONOR.

14    THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

15    VERY WELL.  I HAVE CONSIDERED ALL OF THE MATTERS THAT

16  HAVE BEEN PRESENTED TO ME BOTH BY WAY OF PROFFER, EXHIBITS,

17  TESTIMONY, AND ARGUMENT.  I NOTE THE PRESENCE OF THE

18  DEFENDANT'S GRANDMOTHER IN THE BACK AND OTHER FAMILY MEMBERS,

19  AND I WILL ADDRESS FIRST THE MATTER OF RISK OF FLIGHT.

20    THERE IS A PRESUMPTION -- A STATUTORY PRESUMPTION BUT

21  I BELIEVE THAT THAT PRESUMPTION HAS BEEN REBUTTED BY THE

22  DEFENDANT'S PRESENCE IN THE COMMUNITY.  AND SO, I WILL NOT MAKE

23  ANY FURTHER FINDINGS REGARDING RISK OF FLIGHT.

24    HOWEVER, WITH REGARD TO DANGER TO THE COMMUNITY.  I DO

25  FIND THAT THE PRESUMPTION HOLDS AND IT HAS NOT BEEN REBUTTED.

1  I THINK THAT THIS IS A CASE WHERE DEFINITELY DANGER TO THE
2  COMMUNITY IS PROVEN BY CLEAR AND CONVINCING EVIDENCE.

3        IT INVOLVES, NUMBER ONE, DEALINGS WITH CHILDREN
4  UNDERAGE AND IT -- WHAT IMPRESSES ME THE MOST IS THE FACT THAT
5  MR. ATKINS WAS IN A POSITION OF TRUST AT THE CHILDRENS SHELTER
6  AND THAT THAT TRUST HAS BEEN VIOLATED BY HIS DEALINGS WITH THE
7  TWO YOUNG LADIES WHO WERE THERE.

8        AND, YOU KNOW, I COMPLIMENT YOU, MR. RAVINDRAN, ON
9  YOUR REPRESENTATION OF YOUR CLIENT BUT A COUPLE OF TIMES WHERE
10 YOU SAID IT IS ONLY THE GIRLS TESTIMONY AND IT IS SOMEBODY WHO
11 USED TO RUN AWAY A LOT, THAT IS WHAT MAKES THOSE GIRLS SO
12 SUSCEPTIBLE TO HARM, THE FACT THAT THEY ARE YOUNG GIRLS WHO
13 HAVE HAD DIFFICULT LIFE SITUATIONS AND IT MAKES THEM MUCH MORE
14 VULNERABLE TO WHAT IS HAPPENING HERE.

15       SO FOR THOSE REASONS I DO FIND THAT MR. ATKINS DOES
16 PRESENT A DANGER TO THE COMMUNITY BY CLEAR AND CONVINCING
17 EVIDENCE.

18       I ALSO WOULD BE NEGLECTFUL IF I DID NOT MENTION THAT
19 THE BOND GRANTED IN THE STATE COURT DOES NOT PERSUADE ME.  I
20 HAVE SEEN THAT HIS CODEFENDANT GOT FIVE YEARS PROBATION ON
21 SOMETHING.  I THINK THAT THE BOND PRACTICES IN STATE COURT ARE
22 NOT PERSUASIVE IN THIS COURT.

23       VERY WELL.  PLEASE SUBMIT AN ORDER BY THE CLOSE OF
24 BUSINESS ON WEDNESDAY.

25       MR. SCHLESSINGER:  YES, YOUR HONOR.  THANK YOU.

1          THE COURT:   THANK YOU VERY MUCH.

2          MR. RAVINDRAN:   GOOD MORNING, YOUR HONOR.

3                              -  -  -

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2
 3                        C E R T I F I C A T E
 4
 5
 6   UNITED STATES OF AMERICA
 7   SOUTHERN DISTRICT OF FLORIDA
 8
 9
10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED
11   STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO
12   HEREBY CERTIFY THAT THE FOREGOING 29 PAGES CONSTITUTE A TRUE
13   TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN
14   THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.
15        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS
16   23RD DAY OF JANUARY 2015.
17
18                              /S/CARL SCHANZLEH
                                CARL SCHANZLEH, RPR-CM
19                              CERTIFIED COURT REPORTER
                                9960 SW 4TH STREET
20                              PLANTATION, FL 33324
                                TELEPHONE 954 424-6723
21
22
23
24
25
```