Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20895-CR-COOKE

FILED by _AP_ D.C.

SEP 22 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA

v.

RICKY JERMAINE ATKINS,

      Defendant.
_____/

UNDER SEAL

## GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE AS INEXTRICABLY INTERTWINED WITH CHARGED OFFENSES, AND PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Notice of Intent to Introduce Evidence as Inextricably Intertwined with Charged Offenses, and Pursuant to Federal Rule of Evidence 404(b), and states as follows:[1]

### I. BACKGROUND

The defendant is charged by indictment with conspiracy to engage in the sex trafficking of minors, in violation of 18 U.S.C. § 1594(c), and two counts of engaging in the sex trafficking minors, in violation of 18 U.S.C. § 1591(a)(1). See DE 3 (indictment). In summary, the charges in the indictment pertain to the defendant's active prostitution of two minor females, G.W. and L.P., who resided at the Florida Keys Children's Shelter (the "FKCS"), a facility in Tavernier, Florida for troubled and at-risk children. The defendant had worked at the shelter for several years.

In early August 2014, the defendant encouraged G.W., then fifteen years old, to run away from the FKCS. G.W. discussed the defendant's proposal with L.P. (then sixteen years old).

---

[1] This Notice supplements the Notice previously filed with respect to Atkins' co-defendant, Sandra Simon, who has since pled guilty. See DE 30.

The defendant then suggested that both G.W. and L.P. run away from the shelter, and said that he would pick them up himself and drive them away from the shelter. G.W. and L.P. agreed. On the night of August 15, 2014, G.W. and L.P. left the shelter. G.W. and L.P. used the phones of other persons they encountered after running away to contact the defendant, who arranged to pick up G.W. and L.P. behind a commercial gym in Tavernier. As he drove G.W. and L.P. north toward Homestead, the defendant discussed with G.W. and L.P. the fact that each of them would be working for him as prostitutes, as well as various details about how the prostitution would work.

The defendant first stopped outside a nightclub in Homestead, where several of the defendant's adult male associates joined him, G.W. and L.P. The group then drove to a residence in Homestead, where the defendant informed G.W. that she would be "tested." The "test" was to engage in sexual intercourse with three of the defendant's male associates in the Homestead residence, which G.W. did. The defendant himself also engaged in sexual activity with G.W. at the Homestead residence, as he had previously while G.W. resided at the shelter.

Once this was complete, the defendant drove G.W. and L.P. to a Motel 6 in Cutler Bay where his co-defendant, Sandra Simon, was renting a room. The defendant left G.W. and L.P. with Simon (an adult and an experienced prostitute) intending that they conduct prostitution dates under Simon's supervision, and that their earnings (along with Simon's) be ultimately remitted to him. Simon took photographs of G.W. and L.P. and used them in Internet advertisements offering them for prostitution. Over the next several days, G.W. and L.P. conducted multiple prostitution dates, both at the Cutler Bay Motel 6 and at other hotels. The defendant frequently communicated with Simon to receive updates regarding the number of prostitution dates being conducted by G.W. and L.P.; visited Simon, G.W. and L.P. the next

night (the night of August 16th, 2014), both to collect money and to provide G.W. and L.P. with a cellular telephone to facilitate further prostitution dates; and otherwise took control of proceeds of prostitution dates conducted by G.W. and L.P.

At the same time, the defendant was also actively prostituting two young adult women, J.H. and N.L., in a hotel nearby. J.H. was eighteen years old at the time, and had met the defendant approximately one year earlier, when she was a minor residing at the FKCS. During that time, the defendant engaged in sexual activity with her on multiple occasions. After J.H. turned eighteen in late 2013 and left the shelter, the defendant maintained contact with J.H., encouraging her to work in strip clubs and finally persuading her to work as a prostitute for him in 2014. J.H. traveled south to the Homestead area on multiple occasions, where Simon supervised J.H.'s prostitution dates for the defendant (just as she would later supervise G.W. and L.P.) J.H. informed N.L., a nineteen-year-old at the time,, that she had been working as a prostitute. N.L. joined J.H., and the two worked together conducting prostitution dates for the defendant for several months. While J.H. and N.L. first conducted prostitution dates under Simon's supervision of Simon, they were later supervised by "Tiny," one of the defendant's male associates. This occurred in August 2014, contemporaneously with the defendant's transportation of G.W. and L.P. to Simon for prostitution at a different hotel in the Homestead area. During this period, the defendant physically and sexually assaulted J.H. on multiple occasions, and threatened physical harm to N.L.

## II.  ADMISSIBILITY OF EVIDENCE AT TRIAL

At trial, the Government intends to introduce evidence of the acts described above. Such evidence will be contained in, among other items: 1) the testimony of G.W., L.P., J.H., and N.L.; 2) the testimony of Simon, whom the Government intends to call as a witness to the

defendant's criminal activity; 3) the defendant's text messages, as recovered from the cellular phone seized from him at the time of his arrest; 4) historical cell-site information associated with the defendant's cellular phone, establishing the defendant's whereabouts at relevant times; and 5) records of wire transfers made by some of the above-described persons, sending prostitution proceeds to the defendant. As described below, the evidence is admissible, both as "inextricably intertwined" with evidence of the charged offenses and, in the alternative, pursuant to Fed. R. Evid. 404(b).

### A. Inextricably Intertwined Evidence.[2]

Evidence of the acts described above is admissible at trial because the evidence is inextricably intertwined with the charged offenses, and thus constitutes evidence not of an extrinsic act, but evidence directly tending to establish the defendant's responsibility for the charged offenses. Such non-extrinsic evidence is not to be analyzed under the framework established for evidence sought to be admitted under Fed. R. Evid. 404(b). "[E]vidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir. 1995)). Thus, "evidence, not part of the crime charged but pertaining to the chain of events explaining the context . . . is properly admitted if linked in time and circumstances with the charged crime,

---

[2] Unlike evidence sought to be admitted pursuant to Fed. R. Evid. 404(b), evidence that is admissible as "inextricably intertwined" with evidence of charged offenses need not be separately noticed by the Government prior to trial. See, e.g., United States v. Saunders, 196 F. App'x 873, 876 (11th Cir. 2006) (citing United States v. Leavitt, 878 F.2d 1329, 1339 (11th Cir. 1989)). Nevertheless, in an abundance of caution, and in the event the Court rules that the evidence is admissible solely pursuant to Rule 404(b), the Government hereby provides express notice of its intent to introduce the evidence as "inextricably intertwined."

4

or forms an integral and natural part of the account of the crime . . . to complete the story of the crime for the jury." United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004) (quoting McLean, 138 F.3d at 1403) (internal alteration omitted).

Evidence of the defendant's sexual activity with G.W., both at the FKCS, and subsequently on the night that the defendant delivered G.W. and L.P. to Simon to be prostituted, is plainly "inextricably intertwined" with evidence of the defendant's trafficking of G.W.  First, it tends directly to establish the defendant's cultivation of a relationship with G.W. that involved, rather than the defendant's careful protection of G.W. as required by his employment at the FKCS, G.W.'s sexual abuse at the hands of the defendant – a relationship that led ultimately to the defendant abusing G.W. by trafficking her for commercial sex.  The Eleventh Circuit has recognized in a recent decision that evidence of sexual acts with minor victims of sex trafficking is "inextricably intertwined" with evidence of the commercial sex trafficking itself.  See United States v. Williams, 564 F. App'x 568, 574 (11th Cir. 2014) (noting that evidence that the defendant "engaged in sexual intercourse with at least two [minor victims] is inextricably linked with the charged misconduct of sex trafficking of a minor an/or attempted sex trafficking of a minor").  Second, as noted above, the defendant engaged in sexual activity with G.W. on at least one occasion on the very night that he transported her and L.P. away from the shelter, toward the location where they would soon conduct prostitution dates for the defendant.  The defendant's conduct on this occasion thus could hardly be more "linked in time and circumstances" to the defendant's sex trafficking of G.W., with which he is charged.

Similarly, the evidence of the defendant's prostitution of J.H. and N.L. – and the physical and sexual abuse that accompanied it – is admissible as "inextricably intertwined."  As noted above, the defendant met J.H. (through whom he also met N.L.) the same way that the defendant

5

found minor victims G.W. and L.P. – through his employment at the FKCS, where J.H. had been a resident. J.H. and N.L. also initially conducted prostitution dates for the defendant under Simon's supervision, including at the same Motel 6 in Cutler Bay where Simon received G.W. and L.P. from the defendant. J.H. and N.L. continued to conduct prostitution dates for the defendant at various hotels in southern Miami-Dade County throughout the summer of 2014, including on the weekend of August 15, 2014, when the defendant transported G.W. and L.P. to Simon to be prostituted. Finally, the defendant's text messages with Simon regarding the prostitution of G.W. and L.P. are interspersed with text messages between the defendant and J.H. and N.L., regarding the prostitution in which they were contemporaneously engaging for the defendant.

The evidence of the prostitution of J.H. and N.L. is clearly admissible as "inextricably intertwined" with evidence of the defendant's trafficking of minors G.W. and L.P. Indeed, many courts, including the Eleventh Circuit, have held such evidence admissible, even in cases where the connection between the evidence sought to be admitted and the offenses charged was more tenuous than in the instant case. See, e.g., United States v. Fuertes, 435 F. App'x 802, 809-810 (11th Cir. 2011) (holding admissible defendant's statements that he was a pimp and that he supervised a number of prostitutes as "inextricably intertwined" with evidence that defendant prostituted a minor); see also United States v. Robinson, 702 F.3d 22, 37 (2d Cir. 2012) (arguing that because the defendant had argued that he had no control over a minor's prostitution activities, "[e]vidence that [the defendant] was in the prostitution business and controlled prostitutes other than [minor] Jane Doe was therefore necessary to complete the story of the crime on trial"); United States v. Rivera, 2015 WL 1875658 at *7-*8 (E.D.N.Y. 2015) (admitting evidence of the defendant's employment of other prostitutes at least eight years prior to the start

6

of the charged conspiracy period as "inextricably intertwined" with charged sex-trafficking offense).

### B. Fed. R. Evid. 404(b).

However, even if not deemed admissible as "inextricably intertwined," evidence of the acts described above is nonetheless admissible pursuant to Fed. R. Evid. 404(b) for the limited purpose of establishing the defendant's knowledge, intent and plan with regard to Counts 1 through 3 of the Indictment, charging him and Simon with conspiracy to engage in the sex trafficking of minors and two counts of sex trafficking a minor, in violation of Title 18, United States Code, Sections 1594(c) and 1591(a)(1).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent*, preparation, *plan*, *knowledge*, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b) (emphasis added). "Rule 404(b) is a rule of inclusion, and accordingly 404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case." United States v. Kapordelis, 569 F.3d 1291, 1313 (11th Cir. 2009) (quotations and internal alterations omitted). Evidence of a defendant's "other crimes, wrongs, or acts" is admissible so long as there is "sufficient proof to support a jury's finding that the defendant committed the similar act and the other act is probative of a material issue other than the defendant's character." Id.

This standard is satisfied. The evidence is substantially probative of issues other than the defendant's propensity to commit the crimes alleged in this case – in particular, his knowledge and intent in recruiting, obtaining, providing and maintaining the minors for the purpose of engaging in commercial sex acts. Both the defendant's sexual activity with G.W.

7

and the defendant's simultaneous prostitution of J.H. and N.L. tend to show that the defendant knew and intended that G.W. and L.P. would conduct prostitution dates to earn money for him when the defendant left them with Simon.  Similarly, the defendant's methods in prostituting J.H. and N.L were very similar to his methods in prostituting G.W. and L.P., the charged victims in this case.  The evidence sought to be admitted demonstrates a consistent plan by which the defendant prostituted all four victims.

Because the evidence tends to prove the defendant's knowledge, intent and plan – all expressly permissible Rule 404(b) purposes—it is admissible at trial.  See United States v. Rodriguez, 589 F. App'x 513, 514 (11th Cir. 2015) (summarily affirming defendant's sex-trafficking convictions over objection that trial court erred in permitting introduction of evidence that defendant had previously been convicted of indecent liberties with a minor under Rule 404(b)); United States v. Jennings, 280 F. App'x 836, 841-42 (11th Cir. 2008) (affirming, in trial of defendant accused of sex trafficking of minors, admission pursuant to Fed. R. Evid. 404(b) of testimony that defendant and codefendant had attempted to recruit person other than victim of charged conduct as prostitute); see also United States v. Campbell, 764 F.3d 880, 889-90 (8th Cir. 2014) (affirming district court's decision to permit testimony at trial, under Rule 404(b), of person who was not subject of any charges against the defendant that the defendant

engaged in conduct with respect to her that closely resembled sex trafficking for which defendant was on trial).

WHEREFORE, the Government files this Notice of Intent to Introduce Evidence as Inextricably Intertwined with Charged Offenses, and Pursuant to Fed. R. Evid. 404(b).

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: /s/ Seth Schlessinger
Seth M. Schlessinger
Assistant United States Attorney
Florida Bar No. 64065
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9260
Fax: (305) 536-4676

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I filed the foregoing document with the Clerk of the Court under seal, and served copies upon counsel of record for the defendant via electronic mail and via certified U.S. Postal mail, on September 22, 2015.

/s/ Seth Schlessinger
Seth M. Schlessinger
Assistant United States Attorney